**DEPARTMENT OF HEALTH & HUMAN SERVICES**                             Federal Occupational Health Service

July 8, 2014

**Monifa Martin**
Reasonable Accommodation Coordinator
Workforce Relations Division
Federal Student Aid
830 First Street, N.E.
Washington, DC 20202
Case # 14-

Dear Ms. Martin:

This is a review of the case of **Anamaria Matos**, an employee at the Department of Education, FSA, who has requested a workplace accommodation. The medical documentation consists of:

1. Two prescription pad notes (both largely illegible) dated January 18, 2014 and December 6, 2013, signed by Rodrigo Hurtado, MD, a specialist in the treatment of allergies.
2. A "Patient Work Profile" note dated March 15, 2014 and signed by Guinevere Que, NP (from the Neurology department at George Washington University).
3. A letter and return-to-work note from the employee's primary care provider, Augusto Corllea, MD, dated February 26, 2014.
4. A reply to this reviewer's request for additional medical information from her Allergist, Dr. Hurtado, dated July 3, 2014 and received July 7, 2014.

Non-medical documentation reviewed includes:
A. A reasonable accommodation request form signed by the employee on March 26, 2014.
B. A position description (PD) for an Information Technology Specialist, IT Security Compliance Manager (Supervisory), sections 1 through 5.

**Accommodation requested**: To permanently work from home, full time.

In response to FSA's questions related to Ms. Matos' ADAAA request for accommodation:

1. **Is there sufficient documentation to substantiate that the employee has a disability under the ADAAA or Rehabilitation Act?**
   Yes. Ms. Matos is a person with a disability.

2. **Does the medial documentation substantiate why the requested accommodation is needed?**
   Yes.

3. **Does the employee have a disability or impairment? If so, what is the nature and current severity of the impairment the employee has identified?** She has indicated that she has been flying out of the country and riding public transportation. Is she able to fly on airplanes, trains, or buses? Does she have difficulty when she flies on airplanes or rides trains or buses? When she's in public places such as restaurants and such?

    Yes, Ms. Matos has a disability and is intermittently impaired. She has severe allergies and asthma. Her ability to breathe is severely affected when in the office. She also experiences watery eyes that affect her vision. The above symptoms cause substantial difficulty with cognition (concentrating, thinking, comprehending and learning). Her allergy specialist, Dr. Hurtado, reported that, after a period of recovery from the respiratory symptoms that developed when at the office, her vision and cognitive function return to normal.

    Ms. Matos has reported having no difficulty when she in other settings, e.g. at home, when in public places such a restaurants, or when using public transportation.

4. **To what degree do the employee's symptoms affect her ability to function in the office?** *In general, outside the office? Is she able to fly on airplanes, trains, or buses? What happens when she flies on airplanes or rides trains or buses? When she's in public places such as restaurants and such?*

    Her cognitive impairment substantially limits her ability to perform many of the major duties of an IT Security and Compliance Manager. For example (from her PD):
    - Developing new theories, concepts, principles, standards and methods.
    - Serving as a senior expert and consultant. Advising other IT experts.
    - Managing remediation efforts: developing, planning, initiating, and reporting.
    - Assessing security events to determine appropriate corrective actions.

    With regard to the questions italicized above, please see my responses to #3 above.

5. **To what degree do the employee's symptoms affect her ability to perform her work? In the office? In another building?**

    Her conditions substantially limit her ability to work in the office. I have no information related to any impairment (or lack of same) when in other buildings.

6. **What major life activities are affected by the employee's stated impairment?**

    Please see my responses to #3 above.

7. **What is the extent to which this impairment limits the employee's ability to perform the major life activity or activities in the office and outside the office?**

    With regard to her limitations when in the office, please see my response to #4 above.

    Regarding major life activities outside the office, once her symptoms recede after she has been away from the office, she is able to perform her activities of daily living. In the meantime, besides residual impairment of breathing, vision, and cognition, she also has some difficulty in caring for herself and sleeping.

8. **Is the impairment permanent? If not, how long will the impairment likely last?**
   Her conditions (severe allergies and asthma) are permanent. Her impairments will last until she is no longer exposed to any substances that are present in her office and trigger her symptoms. Furthermore, her symptoms will recur if she is exposed to those substances again.

   Dr. Hurtado recommended performing an environmental evaluation of the workplace in an attempt to identify specific irritants and allergens. He indicated that he is especially concerned about molds and Volatile Organic Compounds (VOC's).

9. **How does the employee's limitation interfere with her ability to perform the job functions or work-related activities?**
   Please see #4 above.

10. **How effective will the requested accommodation (being able to work from home full time) be in mitigating the employee's impairment and allowing her to perform the essential functions of her job?**
    Ms. Matos' prognosis for recovery is good, providing she avoids exposures in the office. After a day or two away from the office, her symptoms substantially improve and she is able to fully perform all of the major duties listed in her PD. Dr. Hurtado anticipates that her underlying medical conditions (allergies and asthma) will progressively improve over the first few months that she works from home.

11. **How effective might it be if the employee is reassigned to another one of our local buildings since the employee has requested, at times, to meet at another building?**
    This is unknown, based on the medical information available. If she has spent significant periods of time (e.g., full days) working in other office settings without developing symptoms, she may be able to change offices. However, this should be attempted with caution and only with Dr. Hurtado's approval. More details are provided in #13.

12. **Prior to requesting to work from home fulltime without coming into the office at all, the employee has also requested to have an office at work, where she can close her door. How effective will working in an office behind a closed door be when she is required to report to the office? The employee has been allowed to work in an office when required to report, but it is unclear if this will still work for her, based on the information she has recently provided.**
    Her allergist does not expect that working in an office behind a closed door would mitigate her symptoms. It is likely that the substances that trigger her allergies and asthma would be present throughout the office.

13. **Are there alternative effective ways that the employee can possibly be accommodated that might mitigate the employee's stated impairment and would allow her to perform the essential functions of her job, such as temporarily relocating the employee's office to another floor while other floors may be worked on or relocating to another building? If so, please outline suggestions you have regarding possible accommodations to improve job performance. Please be specific.**

Based on the medical information available, it is not possible to predict whether relocation of her workplace would be effective. If she has spent significant periods of time (e.g., full days) working in other office settings without developing symptoms, she may be able to change offices or buildings. It would be best to proceed with an indoor air quality assessment prior to considering such changes, and to allow at least 3 months for her to recover, working from home, before instituting any such changes – and then, only with her doctor's approval.

Dr. Hurtado recommended telework ONLY. He did not feel that there were any alternate accommodations that would be effective.

From this reviewer's perspective, it is not clear that she will need to telework indefinitely. Much depends on her response to the factors discussed in #10, 11, and 13 above.

14. **What specific functional limitations are interfering with job performance or work-related activities and their extent?**
    Please refer to my response in #4.

Thank you for this opportunity to assist in this medical evaluation related to your employee's request for reasonable accommodation.

Sincerely,

*[signature]*

Bonnie McCafferty, MD, MSPH
Occupational Medicine Consultant
Federal Occupational Health
Denver Area Office