**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Federal Occupational Health Service

4550 Montgomery Ave., Suite 950
Bethesda, Maryland 20814

November 13, 2014

Ms. Monifa Martin
Reasonable Accommodation Specialist
U.S. Department of Education
Washington, DC 20202

Case#15-0399

Dear Ms. Martin:

This is a letter on the case of **Ms. Anamaria Matos**, an Education employee requesting the accommodation of total telework because of a sensitivity to fragrances that causes symptoms that prevent her from concentrating on her work. This case was previously reviewed by Dr. Bonnie McCafferty on July 8, 2014. The Department of Education has requested an updated review.

For this review I had all of the material cited by Dr. McCafferty in her letter and in addition discussed the case with allergist Drs. Rodrigo Hurtado and internist Augusto Corella and neurological nurse practitioner Ms. Guinevere Que.

Ms. Matos has stated that she suffers from "severe debilitating headaches, dizziness, light headed, lethargy, fatigue, inability to think clearly, confusion, nausea, difficulty breathing, wheezing, anxiety, sensitivity to light, when exposed to inhaling air containing fragrances in cologne, lotions, body oils, shampoos, air fresheners, or aerosol sprays" and furthermore that "I experience headaches are so severe that I become incapacitated, unable to think".

Dr. Corella saw her a few times early this year and referred her to Dr. Hurtado and Ms. Que. He noted no physical findings or laboratory work that was diagnostic but based his follow-up on the history given by Ms. Matos. Ms. Que saw her two or three times early this year and eventually ordered an MRI. There were no relevant findings and Ms. Matos declined a medication that was offered to try to control the headaches. Ms. Matos told Ms. Que that her symptoms were so severe that she was unable to enter shopping malls. Dr. Hurtado performed allergy testing and discovered that Ms. Matos was allergic to many molds, grasses and pollens and instituted allergy shots. He also performed patch testing but did not find any specific fragranced substance to which she reacted. He did pulmonary function testing on her on two occasions and found a slight drop in her values after being exposed to her office environment.

It is also of note that on Ms. Matos' LinkedIn website she states that in addition to working for the Department of Education, for the past five years she has also been a Skin Care Consultant for Jafra Cosmetics International. From a review of the Jafra website, this position is essentially that of a sales representative. The website did not mention any non-fragranced or hypoallergenic products.

In response to the previous questions of the Department of Education:

1. **Is there sufficient documentation to substantiate that the employee has a disability under the ADAAA and/or Rehabilitation Act?** It is not possible to reconcile the available information to reach an answer to this question. She has told her physicians and stated to the Department of Education that she has severe reactions to fragranced substances. However, the nature of her outside employment and her ability to fly in airplanes and take public transportation imply that her impairment is not substantial.
2. **Does the medical documentation substantiate why the requested accommodation is needed?** In view of the answer to question 1, it does not substantiate the need for full time telework.
3. **Does the employee have a disability or impairment? If so, what is the nature and current severity of the impairment the employee has identified?** She has indicated that she has been flying out of the country and riding public transportation. Is she able to fly on airplane, trains or buses? Does she have difficulty when she flies on airplanes or rides trains or buses? When she's in public places such as restaurants and such? She has told Ms. Que that she has difficulty being in shopping malls because of fragrance exposure. Her statement about the degree of her sensitivity to fragrances does not appear compatible with her ability to fly and to take public transportation.
4. **To what degree do the employee's symptoms affect her ability to function in the office? In general, outside the office? Is she able to fly on airplanes, trains, or buses? What happens when she flies on airplanes or rides trains or buses? When she is in public places such as restaurants and such?** It is not possible to answer these questions from the available information.
5. **To what degree do the employee's symptoms affect her ability to work? In the office? In another building?** It is not possible to answer these questions from the available information.
6. **What major life activities are affected by the employee's stated impairment?** She states that she is unable to be in an area in which fragrances are present. However, as stated above, this is not possible to reconcile with other information that is available.
7. **What is the extent to which this impairment limits the employee's ability to perform the major life activity or activities in the office and outside the office?** It is not possible to answer these questions from the available information.
8. **Is the impairment permanent? If not, how long will the impairment likely last?** Impairment has not been firmly established.
9. **How does the employee's limitation interfere with the employee's ability to perform the job functions or work-related activities?** She states that she is unable to perform her job functions in the presence of fragrances. As stated above, it is not possible to reconcile this with her outside work.
10. **How effective will the requested accommodation (being able to work from home fulltime) be in mitigating the employee's impairment and allowing her

Exhibit 4
Page 7 of 50
00379

to perform the essential functions of her job? See the position description attached. An impairment has not been established.

11. How effective might it be if the employee is reassigned to another one of our local building since the employee has requested, at times, to meet in another building? This is impossible to tell from the available information.

12. Prior to requesting to work from home full time without coming into the office at all, the employee has also requested to have an office at work where she can close her door. How effective will working in an office behind a closed door be when she is required to report to the office? The employee has been allowed to work in an office when required to report, but it is unclear if this will still work for her, based on the information she has recently provided. This is impossible to tell from the available information.

13. Are there alternative effective ways that the employee can possibly be accommodated that might mitigate the employee's stated impairment and would allow her to perform the essential functions of her job, such as temporarily relocating to another building. If so, please outline suggestions you have regarding possible accommodations to improve job performance. Please be specific. An impairment has not been established.

14. What special functional limitations are interfering with job performance or work related activities and their extent? She is alleging that the presence of fragrances in her workplace prevent her from being able to concentrate on her work. Once again, this is difficult to reconcile with her outside employment and her ability to ride in airplanes and other public transportation, where there is no control over exposure to fragrances.

Sincerely,

Neal L. Presant, M.D., M.P.H.
Occupational Medicine Consultant

Exhibit 4
Page 8 of 50

00380